# **EXHIBIT A**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>POPE & TALBOT, INC., *et al.*,[1] | Chapter 7<br><br>Case No. 07-11738 (CSS)<br>Jointly Administered |

**STIPULATION BY AND BETWEEN (A) GEORGE L. MILLER, CHAPTER 7
TRUSTEE OF THE ESTATE OF POPE & TALBOT, INC. AND (B) CERTAIN
UNDERWRITERS AT LLOYD'S, LONDON AND CERTAIN LONDON MARKET
COMPANIES GRANTING RELIEF FROM
THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(1)**

This Stipulation is made by and between (a) George L. Miller, Chapter 7 Trustee of the Estate of Pope & Talbot, Inc. (the "Trustee") and (b) Certain Underwriters at Lloyd's, London and Certain London Market Companies (collectively "London Market Insurers").[2]

**Jurisdiction**

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105(a) and 362(d).

---

[1] The Debtors in these proceedings are: Pope & Talbot, Inc.; Pope & Talbot Lumber Sales, Inc.; Pope & Talbot Pulp Sales U.S., Inc.; Pope & Talbot Relocations Services, Inc.; Pope & Talbot Spearfish Ltd. Partnership; P&T Power Company; Mackenzie Pulp Land Ltd.; Pope & Talbot Ltd.; P&T Factoring Limited Partnership; P&T Finance One Limited Partnership; P&T Finance Two Limited Partnership; P&T Finance Three Limited Partnership; P&T Funding Ltd; and P&T LFP Investment Limited Partnership.

[2] The London Market Insurers represented by Duane Morris, LLP are identified in Attachment A hereto. The London Market Insurers represented by Forsberg & Umlauf, P.S., are identified in Attachment B hereto.

**Background**

**Pope Resources' Motion for Relief from the Automatic Stay**

2.      On January 16, 2013, Pope Resources Limited Partnership ("Pope Resources") filed the Motion of Pope Resources Limited Partnership for Entry of an Order Granting Relief from the Automatic Stay [D.I. 1829] (the "Pope Resources Motion") in this matter, a copy of which is attached hereto as **Exhibit 1**.

3.      In the Pope Resources Motion, Pope Resources alleged as follows:

> 3. Prior to the Petition Date, the Debtor operated a sawmill (and conducted related operations) in the Town of Port Gamble, Washington (the "Property"), dating back several decades. Also prior to the Petition Date, the State of Washington Department of Ecology designated the Debtor and PR as "potentially liable persons" under Washington's Model Toxics Control Act, Chap. 70.105D Rev. Code Wash ("MTCA"), with respect to environmental conditions at and in the vicinity of the Property.
>
> 4. The Debtor and PR entered into a Settlement and Remediation Agreement on or about December 28, 2001 (the "Agreement"), relating to environmental conditions at the Property. The Agreement obligated the Debtor to implement and fund the investigation and environmental cleanup of specific areas of the Property, including but not limited to, impacted sediments that may be found in Port Gamble Bay.
>
> 5. The Debtor has not fulfilled, and, upon information and belief, will be unable to fulfill, its environmental cleanup obligations to the State of Washington due to the bankruptcy proceedings. PR's consultants have estimated that the cost to perform the further remedial actions required of the Debtor will be well in excess of $4 million. To the extent that it incurs these costs, PR has a statutory private right of action for remedial costs against the Debtor under MTCA, RCW 70.105D.080, and a contractual right of action against the Debtor under the Agreement.

*Id*. at ¶¶ 3- 5.

4.      Pope Resources requested the following relief:

> By this Motion, PR requests the entry of an order that (a) modifies the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and (2) to

>enable PR to file suit against the Debtor in any court of competent jurisdiction to liquidate its claim against the Debtor relating to the contamination arising from the Debtor's ownership or operation of the Property, and so that PR may attempt to obtain a judgment to perfect PR's claims and, to the extent necessary, to enforce its judgment against the Subject Policies; (b) permits PR to obtain the benefits of the Subject Policies free and clear or any insurance policy restrictions that may exist as conditions precedent to duty to defend or indemnity coverage provisions; and (c) authorizes, but does not require, PR, on behalf of the Debtor, to (i) pay any self-insured retention ("SIR") required by any of the Subject Policies; and (ii) advance any requisite costs as PR may choose, in its sole discretion, in order to satisfy any condition of defense or indemnity insurance coverage.

*Id.* at ¶ 7 (footnote omitted).

  5.  The Pope Resources Motion was uncontested.

  6.  On February 5, 2013, the Court entered an Order granting the Pope Resources Motion [D.I. 1835], a copy of which is attached hereto as **Exhibit 2**. The Order provided, in part:

>The automatic stay imposed pursuant to section 11 U.S.C. § 362(d)(1) and/or (2) shall be modified to enable Pope Resources Limited Partnership ("PR") to file suit against the Debtor in any court of competent jurisdiction to liquidate its claims against the Debtor for contamination arising from the Debtor's ownership or operation of the property, to obtain a judgment to perfect PR's claims, and, to the extent, necessary, ***to enforce its judgment against any applicable insurance coverage of the Debtor*** for such liabilities (the "Subject Policies").

(Emphasis added.)

**The State Court Litigation**

  7.  After being granted relief from the automatic stay, Pope Resources initiated a civil action that is currently pending in the Superior Court for the State of Washington, King County, a civil action, *Pope Resources, LP v. Pope & Talbot, Inc., et al.*, No. 15-2-13277-6 SEA (the "State Court Action"). In the State Court Action, Pope Resources has named as defendants Pope & Talbot, Inc. ("Pope & Talbot") and several insurers, including London Market Insurers.

3

8. Pope Resources contends that Pope Resources is entitled to benefits under insurance policies subscribed to in favor of Pope & Talbot by the London Market Insurers and that London Market Insurers must provide coverage with respect to any liability Pope & Talbot may have towards Pope Resources.

9. London Market Insurers disagree and intend to file cross-claims in the State Court Action against Pope & Talbot for declaratory relief, seeking a finding that the insurance policies were bought back (the "Policy Buy-Back") pursuant to a prior settlement agreement with Pope & Talbot (the "Settlement Agreement").

10. To assert their cross-claims in the State Court Action against Pope & Talbot, London Market Insurers may need relief from the automatic stay under 11 U.S.C. § 362(d).

11. The Trustee has agreed to consent to the entry of an order granting such relief from the automatic stay, so long as such an order only permits the assertion of claim for declaratory relief and not the assertion of claims for damages.

## **Stipulation**

Subject to entry of an order approving this Stipulation, the Parties hereby stipulate and agree as follows;

1. The Court may enter the attached Order, granting to the London Market Insurers relief from the automatic stay, pursuant to 11 U.S.C. § 362(d) to permit London Market Insurers to seek declaratory relief in the State Court Action against Pope & Talbot relating to the enforceability of the Settlement Agreement and Policy Buy-Back.

Dated:  June 27, 2017

| | |
|---|---|
| */s/ John T. Carroll, III* | */s/ Michael R. Lastowski* |
| John T. Carroll, III (DE Bar I.D. No. 4060) | Michael R. Lastowski (DE Bar I.D. No. 3892) |
| COZEN O'CONNOR | Richard W. Riley (DE Bar I.D. No. 4052) |
| 1201 North Market Street, Suite 1001 | DUANE MORRIS LLP |
| Wilmington, DE 19801 | 222 Delaware Avenue, Suite 1600 |
| Telephone:   (302) 295-2028 | Wilmington, DE 19801 |
| Facsimile:   (302) 295-2013 | Telephone:   (302) 657-4900 |
| E-mail:   jcarroll@cozen.com | Facsimile:   (302) 657-4901 |
| | E-mail:   mlastowski@duanemorris.com |
| *Counsel to George L. Miller, Chapter 7 Trustee* | |
| | -and- |
| | |
| | Dominica C. Anderson |
| | Duane Morris LLP |
| | Spear Tower |
| | One Market Plaza, Suite 2200 |
| | San Francisco, CA  94105-1127 |
| | Telephone:   (415) 957-3000 |
| | Facsimile:   (415) 957-3001 |
| | Email:   dcanderson@duanemorris.com |
| | |
| | *Counsel to Movants* |
| | *London Market Companies identified in Attachment A* |

*/s/ Matthew Adams*
Matthew Adams
Charles Henty
Forsberg & Umlauf, P.S.
901 Fifth Avenue, Suite 1400
Seattle, WA 98164
Telephone:   (206) 689-8500
Facsimile:   (206) 689-8501
Email:   madams@FoUm.law

*Counsel to Movants*
*Certain Underwriters at Lloyd's London and London Market Companies identified in Attachment B*

5

## ATTACHMENT A

## LONDON MARKET COMPANIES REPRESENTED BY DUANE MORRIS LLP

| |
|---|
| ALBA GENERAL INSURANCE COMPANY LIMITED |
| ANGLO-FRENCH INSURANCE COMPANY LIMITED |
| CF&AU GROUP INCLUDING: <br> THE DOMINION INSURANCE COMPANY LIMITED, <br> LONDON & EDINBURGH INSURANCE COMPANY LIMITED |
| COMPANHIA DE SEGUROS FIDELIDADE-MUNDIAL SA |
| EXCESS INSURANCE COMPANY LIMITED |
| ICAROM PLC (FORMERLY INSURANCE CORPORATION OF IRELAND) |
| RIVER THAMES INSURANCE COMPANY LIMITED |
| THE DOMINION INSURANCE COMPANY LIMITED |

**ATTACHMENT B**

**CERTAIN UNDERWRITERS AT LLOYD'S, LONDON AND CERTAIN
LONDON MARKET COMPANIES REPRESENTED BY FORSBERG & UMLAUF, P.S.**

| |
|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON |
| ROYAL SCOTTISH INSURANCE COMPANY LIMITED |
| THE SCOTTISH LION INSURANCE COMPANY LIMITED |
| WORLD AUXILIARY INSURANCE CORPORATION LIMITED |

# **<u>EXHIBIT 1</u>**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>POPE & TALBOT, INC., et al.,[1] | Chapter 7<br><br>Case No.: 07-11738 (CSS)<br>Jointly Administered<br><br>Hearing Date: 2/27/2013 at 9:45 a.m. (E.T.)<br>Obj. Deadline: 1/30/2013 at 4:00 p.m. (E.T.) |

## MOTION OF POPE RESOURCES LIMITED PARTNERSHIP FOR ENTRY OF AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY

Pope Resources Limited Partnership ("PR"), by and through its undersigned counsel, hereby moves ("Motion") the Court for entry of an order, pursuant to 11 U.S.C. §§ 105(a) and 362(d), that: (i) modifies the automatic stay so that PR is able to bring and pursue an action against Pope & Talbot, Inc. ("Debtor"), one of the above-captioned debtors, as well as any necessary related debtor entities (collectively, the "Debtors"), in any court of competent jurisdiction for the purpose of allowing PR to procure insurance proceeds from the Debtor's insurers for the investigation and remediation of contamination of certain property, as well as related costs; and (ii) authorizes PR to advance costs if required under any insurance policies as a condition precedent to triggering insurance coverage.

### Jurisdiction

1.  This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105(a) and 362(d).

---

[1] The Debtors in these proceedings are: Pope & Talbot, Inc.; Penn Timber, Inc.; Pope & Talbot Lumber Sales, Inc.; Pope & Talbot Pulp Sales U.S., Inc.; Pope & Talbot Relocation Services, Inc.; Pope & Talbot Spearfish Ltd. Partnership; P&T Power Company; Mackenzie Pulp Land Ltd.; Pope & Talbot Ltd.: P&T Factoring Limited Partnership; P&T Finance One Limited Partnership; P&T Finance Two Limited Partnership; P&T Finance Three Limited Partnership; P&T Funding Ltd.; and P&T LFP Investment Limited Partnership.

{05004079.DOCX.}

## Background

2. On November 19, 2007 (the "Petition Date"), the Debtors filed for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' bankruptcy cases were subsequently converted to cases under chapter 7 of the Bankruptcy Code.

3. Prior to the Petition Date, the Debtor operated a sawmill (and conducted related operations) in the Town of Port Gamble, Washington (the "Property"), dating back several decades. Also prior to the Petition Date, the State of Washington Department of Ecology designated the Debtor and PR as "potentially liable persons" under Washington's Model Toxics Control Act, Chap. 70.105D Rev. Code Wash. ("MTCA"), with respect to environmental conditions at and in the vicinity of the Property.

4. The Debtor and PR entered into a Settlement and Remediation Agreement on or about December 28, 2001 (the "Agreement"), relating to environmental conditions at the Property. The Agreement obligated the Debtor to implement and fund the investigation and environmental cleanup of specific areas of the Property, including but not limited to, impacted sediments that may be found in Port Gamble Bay.

5. The Debtor has not fulfilled, and, upon information and belief, will be unable to fulfill, its environmental cleanup obligations to the State of Washington due to the bankruptcy proceedings. PR's consultants have estimated that the cost to perform the further remedial actions required of the Debtor will be well in excess of $4 million. To the extent that it incurs these costs, PR has a statutory private right of action for remedial costs against the Debtor under MTCA, RCW 70.105D.080, and a contractual right of action against the Debtor under the Agreement.

6.    The Debtor may have applicable insurance coverage for its above-referenced liabilities ("Subject Policies"), under which PR is named as an additional insured. PR needs the ability to directly pursue the Debtor's insurer(s), as it will ultimately likely be the party that has to remediate the Property.

### Requested Relief

7.    By this Motion, PR requests the entry of an order that (a) modifies the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and (2) to enable PR to file suit against the Debtor in any court of competent jurisdiction to liquidate its claim against the Debtor relating to the contamination arising from the Debtor's ownership or operation of the Property, and so that PR may attempt to obtain a judgment to perfect PR's claims and, to the extent necessary, to enforce its judgment against the Subject Policies; (b) permits PR to obtain the benefits of the Subject Policies free and clear of any insurance policy restrictions that may exist as conditions precedent to duty to defend or indemnity coverage provisions; and (c) authorizes, but does not require, PR, on behalf of the Debtor, to (i) pay any self-insured retention ("SIR") required by any of the Subject Policies; and (ii) advance any requisite costs as PR may choose, in its sole discretion, in order to satisfy any condition of defense or indemnity insurance coverage.[2]

### Basis for Relief Requested

8.    The Debtor is insolvent, but may have insurance coverage for environmental contamination under the Subject Policies. Litigation may be necessary to invoke insurance coverage under the Subject Policies. To commence litigation, relief from stay will be necessary, because the Debtor's insurance policies are property of its bankruptcy estate under the broad definition of 11 U.S.C. § 541(a) of the Bankruptcy Code. *In re Allied Prods. Corp.*, 288 B.R.

---

[2]    This additional relief is necessary for PR because (i) the Debtor is insolvent and lacks the ability to make any such payments; (ii) the Debtor's bankruptcy cases may be fully administered and closed before the time to make any such payment ripens; and (iii) the Subject Policies may not provide any defense or coverage until any such SIR or cost advance is paid.

{05004079.DOCX.}    3

533 (Bankr. N.D. Ill. 2003).

9. Section 362(d)(1) of the Bankruptcy Code permits the court to grant relief "for cause". The language "for cause" has been broadly interpreted on a case-by-case basis and has been interpreted to permit a party to pursue claims in other courts which may be covered by insurance. *See e.g., In re 15375 Memorial Corp.*, 382 B.R. 652, 686 (Bankr. D. Del. 2008), *rev'd*, 400 B.R. 420 (D. Del. 2009), *aff'd*, 589 F.3d 605 (3d Cir. 2009).

10. Section 362(d) of the Bankruptcy Code provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay....(1) for cause....; (2) with respect to a stay of an act against property under subsection (a) of this section, if— (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization....;

11 U.S.C. § 362(d).

11. PR seeks modification of the automatic stay to permit it to obtain a judgment against the Debtor for the purpose of triggering insurance coverage for the cleanup of environmental contamination at the Property. Other than the benefits of insurance coverage, the Debtor has no known equity in the Subject Policies. Upon information and belief, the Debtor terminated its operations at the Property many years ago. The Debtor is now in a chapter 7 bankruptcy liquidation. There is no known reason that the Subject Policies would be necessary for any reorganization arising from a four-year-old chapter 7 case. The Debtor's interest in the Subject Policies is minimal, as explained by this Court in *In re 15375 Memorial Corp.*, and funds available under the policies, if any, would be restricted to payment of claims covered by the policies and would not be available for payment of creditors, generally. *In re 15375 Memorial Corp.*, 382 B.R. at 687-88.

12. Additionally, with respect to the relief that PR is seeking under section 105(a) of the Bankruptcy Code, PR believes that certain of the subject insurance policies may contain SIRs or policy language which requires the Debtor to incur actual costs as a condition precedent to legal defense reimbursement and/or indemnity coverage. The District Court for the Eastern District of Pennsylvania explained the practical problems associated with policies containing SIRs when it stated:

> Should an insured with a deductible become insolvent, the insurer must satisfy the deductible as part of its obligation to pay losses up to its limits of liability. With a SIR, the impact of the insured insolvency usually is felt by the claimant-not the insurer. The insured remains obligated to pay the amount of its SIR directly to the claimant, and the insurer is liable only for that portion of the loss exceeding the SIR. Finally, when a liability policy includes an SIR, the insured generally adjusts claims, either directly or through a third-party administrator. With a deductible, however, the insurer retains control of claims handling.

*Hartford Fire Ins. Co. v. Terra Ins. Co.*, 2004 U.S. Dist. LEXIS 15340 (E.D. Pa. 2004).

13. The Bankruptcy Court for the District of Delaware further recognized that an insurer may be obligated to pay a claim against an insolvent debtor, explaining:

> In addition, Dixon argues that, while we granted him relief from the stay with permission to proceed against insurance proceeds, the terms of the insurance policies make it impossible for him to obtain any recovery. The insurance policies are marine protection and indemnity policies which require that the Debtor actually pay the insured claims before the insurer is required to reimburse the Debtor. Thus, Dixon asserts that unless we order the estate to pay his claim, he cannot recover under the insurance policies.
>
> There is authority, however, that would preclude the insurance carriers from requiring the estate to pay the claimants before they can recover from the insurance carriers. *See, e.g., Home Ins. Co. of Ill. v. Hooper*, 294 Ill. App. 3d 626, 632, 691 N.E.2d 65, (Ill. App. Ct. 1998) (holding that insurance policy provision which required actual payment of self-insured retention by insolvent insured before insurance carrier was obligated to pay damages violated public policy).

{05004079.DOCX.} 5

*In re Muma Servs.*, 322 B.R. 541, 551-552 (Bankr. D. Del. 2005) (*internal quotations omitted*).

14. As a statutory basis under the Bankruptcy Code for PR's requested relief, section 541 of the Bankruptcy Code effectively preempts any contractual provision that purports to limit or restrict the rights of a debtor to transfer or assign its interests in bankruptcy. *See In re Combustion Engineering, Inc.*, 391 F.3d 190, 219 (3d Cir. 2004). Although *Combustion Engineering* was a mass tort chapter 11 reorganization case with a channeling injunction and a trust for present and future asbestos tort claimants where the insurers funded the trust through insurance policy buybacks from the debtor in possession, its holdings are still relevant to this case. The *Combustion Engineering* Court explained:

> Bankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process. As courts of equity, bankruptcy courts have broad authority to modify creditor-debtor relationships. Section 105(a) of the Bankruptcy Code expressly provides bankruptcy courts the equitable power to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [Title 11]. This section has been construed to give a bankruptcy court "broad authority" to provide equitable relief appropriate to assure the orderly conduct of reorganization proceedings.

*Id.* at 235-36 (*internal citations and quotations omitted*).

15. PR is requesting this relief now because although PR is not required to pursue its claims against the Debtor now or pursue recoveries against the Subject Policies now, by the time such claims ripen and become payable, the Debtor's chapter 7 case may be closed. If PR did not seek and obtain the relief requested herein no, at that point, once the claims ripen, PR would possibly need to move to reopen the Debtor's case so that it would be permitted to do those things for which it is requesting permission pursuant to this Motion. PR is requesting the relief herein now so as to save all the parties (including the Court) from the extra time and resources that would they would necessarily have to expend if PR were forced to file a motion to reopen

{05004079.DOCX.}    6

the Debtor's case at some point in the future.

16. For all of the foregoing reasons, and because the relief that PR seeks herein is narrowly tailored and will not cost the estate any money, other than to trigger the otherwise dormant Subject Policies of insurance of the Debtor, PR hereby respectfully requests that the Court enter an order that grants all of the relief requested herein.

### Notice

17. Notice of this Motion has been given to: (i) counsel to Debtors; (ii) counsel to the Chapter 7 Trustee; (iii) the office of the United States Trustee; and (iv) each person required to receive notice through Bankruptcy Rule 2002.

WHEREFORE, PR respectfully requests that the Court enter an Order, substantially in the form attached hereto, granting the relief requested in this Motion, and that grants such other and further relief as is just and proper.

Dated: January 16, 2013

CONNOLLY GALLAGHER LLP

*Kelly McConle*

Karen C. Bifferato (No. 3279)
Kelly M. Conlan (No. 4786)
1000 West Street
Suite 1400
Wilmington, Delaware 19899
(302) 757-7300

*Counsel for Pope Resources Limited Partnership*

# **<u>EXHIBIT 2</u>**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| POPE & TALBOT, INC., et al.,[1] | Case No.: 07-11738 (CSS)<br>Jointly Administered |
| | Re: D.I. 1829 |

## ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY

Upon consideration of the *Motion of Pope Resources Limited Partnership for Entry of an Order Granting Relief from the Automatic Stay* ("Motion")[2]; the Court finding that notice of the Motion was proper and that no other or further notice is necessary; and after due deliberation and sufficient cause appearing therefore;

IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED.

2. The automatic stay imposed pursuant to section 11 U.S.C. § 362(d)(1) and/or (2) shall be modified to enable Pope Resources Limited Partnership ("PR") to file suit against the Debtor in any court of competent jurisdiction to liquidate its claims against the Debtor for contamination arising from the Debtor's ownership or operation of the property, to obtain a judgment to perfect PR's claims, and, to the extent, necessary, to enforce its judgment against any applicable insurance coverage of the Debtor for such liabilities (the "Subject Policies").

3. PR shall be granted permission to obtain the benefits of the Subject Policies free and clear of any insurance policy restrictions that may exist as conditions precedent as to duty to

---

[1] The Debtors in these proceedings are: Pope & Talbot, Inc.; Penn Timber, Inc.; Pope & Talbot Lumber Sales, Inc.; Pope & Talbot Pulp Sales U.S., Inc.; Pope & Talbot Relocation Services, Inc.; Pope & Talbot Spearfish Ltd. Partnership; P&T Power Company; Mackenzie Pulp Land Ltd.; Pope & Talbot Ltd.: P&T Factoring Limited Partnership; P&T Finance One Limited Partnership; P&T Finance Two Limited Partnership; P&T Finance Three Limited Partnership; P&T Funding Ltd.; and P&T LFP Investment Limited Partnership.

[2] All terms not defined herein shall have the meanings ascribed to such terms in the Motion.

{05004079.DOCX.}

defend or indemnity coverage provisions.

4. PR is authorized, but not required, on behalf of the Debtor, to (a) pay any self-insured retention ("SIR") required by any of the Subject Policies; and (b) advance any requisite costs as PR may choose, in its sole discretion, in order to satisfy any condition of defense or indemnity insurance coverage.

5. The Court shall retain jurisdiction over all matters related to the implementation of this Order.

Dated: February 4, 2013
Wilmington, Delaware

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE